**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ROME DIVISION**

| | |
|---|---|
| CARCELIA DELK<br><br>PLAINTIFF,<br>*v.*<br><br>TERRY NIX EQUIPMENT, LLC;<br>ALLISON SMITH COMPANY LLC<br><br>DEFENDANTS. | Civil Action No.<br><br>Jury Trial Demanded |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff, Carcelia Delk, by and through her undersigned counsel, files this Complaint for sexual harassment, retaliation and unlawful termination of employment in violation of 42 U.S.C. §2000e et. seq. against Defendants, Terry Nix Equipment, LLC and Allison Smith Company LLC, and alleges as follows:

PARTIES

1.

Plaintiff Carcelia Delk is a citizen and resident of the United States currently residing in Paulding County, GA.

2.

Defendant Terry Nix Equipment, LLC ("Defendant Terry") is based in Georgia and may be served with process by serving its registered agent, Terry W. Nix at 250 Quarters Rd., Fayetteville, GA, 30215.

3.

Defendant Allison Smith Company LLC ("Defendant Allison") is based in Delaware and may be served with process by serving its registered agent, Cogency Global Inc. at 233 Peachtree St NE, Ste 2307, Atlanta, GA, 30303.

JURISDICTION AND VENUE

4.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

5.

This suit is authorized and instituted pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e, et. seq. ("Title VII").

6.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission on January 1, 2026 and June 26, 2026. Plaintiff received her Notice of Rights to Sue on September 11, 2026 and September 3, 2026 respectively. Hence, Plaintiff has exhausted her

administrative remedies and timely brings this action.

7.

Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this action occurred within this district.

## FACTUAL BACKGROUND

8.

Plaintiff began working for Defendant Terry in April 2025 as a Heavy Equipment Operator.

9.

Defendant Terry employed and paid Plaintiff for her work.

10.

On September 8, 2025, Defendant Terry assigned Plaintiff to work at job sites operated by Defendant Allison.

11.

Depending on the assignment, Plaintiff operated equipment owned by Defendant Terry or Defendant Allison.

12.

James Jewett ("Jewett") worked as a safety manager associated with Defendant Allison.

13.

Jewett interacted with Plaintiff at the job sites where she performed work for Defendant Terry and Defendant Allison.

14.

Shortly after Plaintiff began working at the Defendant Allison job site, Jewett began making unwanted sexual comments to her.

15.

In mid-to-late September 2025, Jewett stopped Plaintiff as she was walking toward the bus.

16.

Jewett told Plaintiff that he enjoyed watching her work and that seeing “a woman of color” perform her job “turns me on.”

17.

Plaintiff attempted to change the subject and distance herself from Jewett.

18.

On September 29, 2025, during a mandatory safety meeting, Jewett approached Plaintiff and a coworker.

19.

Jewett stated, “I’m looking for you,” and told Plaintiff, “you are the

one that I want to sit with."

20.

Jewett pressured Plaintiff to accept his Facebook friend request immediately, despite her stating that she preferred to wait until after work.

21.

On September 30, 2025, Jewett began sending Plaintiff sexually explicit messages and videos, including images of his genitalia.

22.

Jewett sent Plaintiff a message stating, "You are one fine woman, dear ... fine, pretty and full of good genuine energy."

23.

Later that day, Jewett sent Plaintiff multiple videos of himself masturbating. He asked her, "Do you like what you see, sweetheart?" and stated, "I know [my penis] likes you."

24.

Jewett also told Plaintiff, "As you can see, baby, this is how I spend much of my private time," and, "Girl, you've got me over here just acting a fool!!!"

25.

In another message, Jewett stated, "I just came out of the bathroom

again," indicating that he had been engaging in sexual activity while at work.

26.

On October 1, 2025, Jewett sent Plaintiff another video of himself masturbating.

27.

On October 4, 2025, Jewett sent Plaintiff two additional explicit videos. He stated that "somebody's," referring to his penis, "was thinking about me."

28.

On October 9, 2025, Jewett recorded himself masturbating in a job-site bathroom and sent Plaintiff the video with the message, "look what you made me do."

29.

Later that day, Jewett sent Plaintiff a collage containing four explicit photographs of his naked body, including images exposing his genitals and anus.

30.

At approximately 6:07 p.m. on October 9, 2025, Jewett video-called Plaintiff while masturbating.

31.

On October 10, 2025, at approximately 5:34 a.m., Jewett arrived early at Plaintiff's work post to "catch" her arriving at work.

32.

Plaintiff found Jewett's conduct frightening and disturbing. She attempted to maintain her composure because other workers were present.

33.

During the week of October 6 through October 11, 2025, Jewett threatened Plaintiff's job because she refused his sexual advances.

34.

Jewett continued contacting Plaintiff despite her efforts to distance herself from him.

35.

On October 14, 2025, Plaintiff texted Jewett, "Hi .. please don't send me anymore of those nude images, thanks."

36.

Plaintiff also warned Jewett, "Please stop if you don't want to get in trouble. This is not safe and you are a safety manager."

37.

Jewett did not stop. Instead, he sent Plaintiff another explicit message, which he later deleted.

38.

On October 16, 2025, Plaintiff reported Jewett's sexual harassment to QTS, Defendant Allison's Human Resources, and Terry Nix ("Nix"), Defendant Terry's CEO.

39.

Plaintiff's complaints concerned Jewett's repeated sexual messages, explicit videos, nude photographs, and conduct toward her at the Defendant Allison job site.

40.

Plaintiff expressed fear about returning to the job site where Jewett worked.

41.

After Plaintiff reported the harassment, Rebecca (last name unknown) informed Plaintiff that she was "no longer welcome on premises" and that her badge had been deactivated.

42.

Rebecca further informed Plaintiff that Nix had instructed her to deactivate Plaintiff's badge.

43.

On October 24, 2025, Plaintiff again texted Jewett, stating, "Please

stop" and asking him to delete the material that continued to come through.

44.

Despite Plaintiff's repeated requests, Jewett continued sending unwanted sexual communications.

45.

After Plaintiff's badge was deactivated, Defendant Terry stopped providing her with work assignments.

46.

Nix nevertheless contacted Plaintiff and instructed her to remain on standby. He also identified potential job locations and discussed additional work with her.

47.

At the time, Plaintiff was also receiving medical care and workers' compensation benefits for a workplace injury.

48.

QTS and Defendant Allison ultimately closed their investigations into Plaintiff's complaints without taking disciplinary action against Jewett.

49.

Jewett remains employed by Defendant Allison.

50.

Plaintiff's employment with Defendant Terry ended on January 30, 2026.

COUNT I
QUID PRO QUO SEXUAL HARASSMENT IN VIOLATION OF TITLE VII
42 U.S.C. § 2000e-2(a)(1)

51.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 50 of this Complaint as though fully set forth herein.

52.

At all relevant times, Plaintiff was an employee within the meaning of Title VII, 42 U.S.C. § 2000e(f).

53.

At all relevant times, Defendant Terry and Defendant Allison were employers within the meaning of Title VII, 42 U.S.C. § 2000e(b), and were subject to Title VII's prohibitions against sex discrimination.

54.

Plaintiff was subjected to unwelcome sexual advances, sexually explicit communications, and other sexual conduct by Jewett while performing work at Defendant Allison's job sites.

55.

Jewett used his position as a safety manager at Defendant Allison's

job sites to approach Plaintiff, pressure her to engage with him, and threaten her employment when she refused his sexual advances.

56.

Plaintiff rejected Jewett's advances and repeatedly demanded that he stop sending her sexually explicit material.

57.

Plaintiff's rejection of Jewett's sexual advances was followed by adverse employment consequences, including the deactivation of her job-site badge, the cessation of work assignments from Defendant Terry, and the eventual termination of her employment.

58.

Plaintiff alleges that Jewett's threats concerning her job and the adverse employment consequences that followed her rejection of his advances demonstrate that her submission to or rejection of his sexual demands affected the terms and conditions of her employment.

59.

Defendant Allison is liable for Jewett's conduct to the extent that he acted as its supervisor, agent, or representative and exercised authority over Plaintiff's working conditions or access to its job sites.

60.

Defendant Terry is liable for its own employment actions and for any actionable harassment attributable to it under Title VII, including through any agency or joint-employer relationship established by the evidence.

61.

Defendants' conduct subjected Plaintiff to discrimination because of her sex, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

## COUNT II
## SEX BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
## 42 U.S.C. § 2000e-2(a)(1)

62.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 50 of this Complaint as though fully set forth herein.

63.

At all relevant times, Plaintiff was an employee within the meaning of Title VII, 42 U.S.C. § 2000e(f).

64.

Defendant Terry and Defendant Allison were employers within the meaning of Title VII, 42 U.S.C. § 2000e(b).

65.

Plaintiff was subjected to unwelcome harassment because of her sex while performing work at Defendant Allison's job sites.

66.

The harassment included repeated sexual comments, sexually explicit text messages, videos of Jewett masturbating, photographs exposing his genitals and anus, and a video call during which Jewett masturbated.

67.

Jewett also approached Plaintiff at work, arrived early at her work post to catch her arriving, and threatened her job when she refused his sexual advances.

68.

The harassment was frequent, sexually explicit, intimidating, and humiliating. It continued despite Plaintiff's efforts to distance herself from Jewett and her express demands that he stop.

69.

The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an objectively hostile or abusive working environment.

70.

Plaintiff subjectively experienced the environment as hostile and abusive, as demonstrated by her fear of returning to the job site and her repeated requests that Jewett stop his conduct.

71.

Defendant Allison, through its Human Resources personnel and other responsible representatives, received actual notice of Plaintiff's complaints concerning Jewett's conduct.

72.

Defendant Terry, through its CEO, Nix, also received actual notice of Plaintiff's complaints on October 16, 2025.

73.

Despite receiving notice, Defendants failed to take effective corrective action to prevent further harassment or impose discipline on Jewett. QTS and Defendant Allison ultimately closed their investigations without disciplinary action against him.

74.

Instead, Plaintiff was informed that she was no longer welcome at the job site and that her badge had been deactivated at Nix's direction. Defendant Terry thereafter stopped providing Plaintiff with work assignments.

75.

Defendant Allison is liable for the hostile work environment to the extent that Jewett acted within the scope of his authority as its supervisor or

agent, or that Defendant Allison otherwise failed to take prompt and appropriate corrective action after receiving notice of the harassment.

76.

Defendant Terry is liable to the extent that it knew or should have known of the harassment and failed to take prompt and appropriate corrective action, or that the harassment is otherwise attributable to it under Title VII.

77.

Defendants' conduct violated Title VII, 42 U.S.C. § 2000e-2(a)(1).

COUNT III
RETALIATION IN VIOLATION OF TITLE VII
42 U.S.C. § 2000e-3(a)

78.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 50 of this Complaint as though fully set forth herein.

79.

At all relevant times, Plaintiff was an employee within the meaning of Title VII, 42 U.S.C. § 2000e(f).

80.

Defendant Terry and Defendant Allison were employers within the meaning of Title VII, 42 U.S.C. § 2000e(b).

81.

Plaintiff engaged in protected activity when she rejected Jewett's unwanted sexual advances, demanded that he stop sending sexually explicit material, and reported his conduct to QTS, Defendant Allison's Human Resources department, and Nix on October 16, 2025.

82.

Plaintiff's complaints communicated that she opposed unwanted sexual conduct in the workplace and sought protection from further harassment.

83.

Defendants had actual notice of Plaintiff's protected activity through the reports made to their respective representatives.

84.

After Plaintiff reported the harassment, Rebecca informed her that she was no longer welcome on Defendant Allison's premises and that her badge had been deactivated at Nix's direction.

85.

Following the badge deactivation, Defendant Terry stopped providing Plaintiff with work assignments, although Nix continued to communicate with Plaintiff about potential work and instructed her to remain on standby.

86.

Plaintiff's employment with Defendant Terry ultimately ended on January 30, 2026.

87.

The timing of the badge deactivation and cessation of work assignments, together with the circumstances surrounding Plaintiff's complaints and Defendants' responses, supports a causal connection between Plaintiff's protected activity and the adverse employment actions.

88.

Defendants' actions materially affected Plaintiff's access to work, employment opportunities, and continued employment.

89.

Defendant Terry retaliated against Plaintiff to the extent that it discontinued her assignments or terminated her employment because she opposed and reported unlawful sexual harassment.

90.

Defendant Allison retaliated against Plaintiff to the extent that it excluded her from its job sites or otherwise caused or contributed to adverse employment actions because she reported Jewett's conduct.

91.

Defendants' conduct violated Title VII, 42 U.S.C. § 2000e-3(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a trial by jury on all issues and respectfully requests the following relief:

1. Compensatory damages for lost wages, economic benefits of employment to Plaintiff in the amount to be determined by the trier of fact;
2. Compensation for emotional distress and humiliation;
3. Punitive damages to punish Defendant for its discriminatory actions;
4. Cost of litigation in this action and her reasonable attorney's fees;
5. Any other relief the Court deems just and proper.

Respectfully submitted this 12th day of November 2026.

**JESSE KELLY PC**
By: /s/ Jesse L. Kelly
Jesse L. Kelly, Esq.
Georgia Bar No. 935869
3355 Lenox Road Suite 1000
jesse@jkellypc.com

# CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 5.1, the undersigned, attaches this Certificate of Compliance.

This 12th day of November 2026.

**JESSE KELLY PC**

*/s/ Jesse Kelly*
**Jesse L. Kelly**
Ga Bar No. 935869
3355 Lenox Rd. Suite 1000,
Atlanta, GA 30326
Phone: (678) 460-6801
Fax: (678) 730-3443
jesse@jkellypc.com